IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

MARK J. MEY,

Petitioner,

v.

OPINION & ORDER

15-cv-740-jdp

REED RICHARDSON,

Respondent.

Petitioner Mark J. Mey, a Wisconsin prisoner incarcerated at the Stanley Correctional Institution, seeks a writ of habeas corpus under 28 U.S.C. § 2254. He challenges a state conviction from the Dane County Circuit Court for three counts of being party to attempted homicide and three counts of being party to endangering safety by use of a firearm. I screened his petition and allowed him to proceed with an ineffective assistance of counsel claim.

Mey argues that his trial counsel was ineffective for (1) allowing gang-related evidence to be admitted during the trial and (2) failing to object to an erroneous jury instruction where the trial court mistakenly stated that Mey had pleaded guilty. As for the gang-related evidence, Mey has not shown that his trial attorney's performance was deficient or that the attorney's error prejudiced him. As for the jury instruction, the attorney's failure to object to the erroneous jury instruction could be deficient, but Mey has not shown that he was prejudiced by his attorney's failure to object. Accordingly, I will deny Mey's petition.

BACKGROUND

This case is about a shooting between two rival gangs, the Crips and the Bloods. In July 2005, Mey was a member of the Crips, who decided to "up his standing" within the Crips by

"ripping off" a high-ranking member of the Bloods, Sombath Lo, also known as "Fat Boi." Dkt. 11-8, at 540. Mey and two others stole about $7,000, along with a .22 lemon-squeeze pistol from Lo. *Id.* The next day, Lo found out what Mey had done and ordered an SOS (shoot-on-sight) on Mey. But a few other Bloods, who were relatives of Mey, decided that they would not let Mey be killed. Mey learned about the SOS on him and decided to carry out a "preemptive strike," with the help of other Crips and some Bloods who chose their familial ties with Mey over their gang allegiance. *Id.*, at 553. They carried out the attack on August 9, 2005, in the Village of Oregon, Wisconsin, where they shot and injured three victims.

At least 11 individuals participated in the shooting. Mey and three other co-defendants went to trial. Mey's defense was that he was not one of the shooters. Dkt. 11-5, at 359-65 (Mey's opening statement); Dkt. 11-8, at 604-40 (closing argument by Mey's attorney). After a two-week trial, the jury found each of the defendants guilty on six counts: three counts of being party to attempted first-degree intentional homicide and three counts of being party to endangering safety by use of a firearm. The court sentenced Mey to 24 years of initial confinement and 9 years of extended supervision. Dkt. 11-2, at 34-35.[1]

In this habeas petition, Mey challenges two aspects of his attorney's performance during the trial: the attorney's failure to object to (1) admission of "gang-related evidence" and (2) the circuit court's erroneous instruction to the jury that Mey had pleaded guilty.

---

[1] Mey's brief indicates that his sentence is 26 years of initial confinement and 11 years of extended supervision. Dkt. 22, at 6. But I will rely on the sentence length indicated in the circuit court's judgment. Dkt. 11-2, at 34-35.

## A. Gang-related evidence

Before the trial began, the defense attorneys collectively sought to prevent the state from introducing evidence of gang affiliations and gang activities. Dkt. 11-4, at 296-97. The state argued that the gang-related evidence was to provide "context to complete the story"— i.e., the Crips versus Bloods rivalry—whereas the defense argued that the gang evidence was "prejudicial and unnecessary." *Id.* at 297. The circuit court rejected the defense's argument and explained that the evidence was relevant, but it also ruled that the state could not "make gratuitous use" of the gang-related evidence to suggest that the defendants were guilty solely because of their gang affiliations. *Id.* at 300-01. In response to the ruling, Mey's attorney proposed a limiting instruction on gang-related evidence, which the court adopted. *Id.* at 300. That instruction directed the jury not to infer guilt based on testimony about gang affiliation. Dkt. 11-2, at 94.

During the trial, the state and the defense both elicited gang-related evidence. Indeed, gang rivalry and violence among gang members turned out to be pretty much the whole case for both sides at trial. Mey's attorney did not object either to the state's or co-defendants' use of gang-related evidence and the attorney himself elicited testimony about gangs.

## B. Jury instruction

At the close of the trial, the court instructed the jury on the elements of attempted first-degree intentional homicide. Dkt. 11-8, at 509-12. The court gave this instruction three times, once for each count. During the instruction on the first count, the court told the jury that "[t]o this charge, each of the defendants before you has entered a plea of *not guilty*, which means the State must prove every element of the offense charged beyond a reasonable doubt." *Id.* at 510

(emphasis added). But during instruction on the second and third counts, the court omitted the word "not" and told the jury as follows:

> To this charge, each of the defendants before you has entered a plea of *guilty*, which means that the State must prove every element of the offense charged beyond a reasonable doubt."

*Id.* at 551-52 (emphasis added). The parties agree that the instruction should have been read "not guilty." No attorney in the courtroom—the prosecutor or any of the defense attorneys—objected.

There is some doubt whether the court actually omitted the word "not." Stakes were high for all parties, and there were five experienced attorneys in the courtroom. But the trial transcript shows that the court omitted the word "not," *id.*, so I will presume, for the purposes of this opinion, that the circuit court did omit it.

## C. Procedural history

Mey appealed with the help of his appellate counsel, arguing that the state had insufficient evidence and that the jury should have been instructed to a possible lesser-included offense. Dkt. 11-2, at 185. The Wisconsin Court of Appeals affirmed. *Id.* at 279. The Wisconsin Supreme Court denied Mey's petition for review. *Id.* at 321.

Mey then returned to the circuit court and moved for postconviction relief, pro se. *Id.* at 128. Before the circuit court, he raised three arguments:

> (1) his trial counsel was ineffective for allowing gang-related evidence beyond the scope of the circuit court's pretrial order;
>
> (2) the circuit court erred by allowing the introduction of gang-related evidence; and
>
> (3) the circuit court erred by telling the jury that Mey had pleaded guilty.

*Id.* at 131-48. The circuit court denied Mey's motion in an oral ruling. Dkt. 11-9, at 58. Mey

appealed, but he raised slightly different arguments before the Wisconsin Court of Appeals:

> (1) his attorney was ineffective for allowing the state and co-defendants to elicit gang-related evidence;
>
> (2) the circuit court erred by giving the erroneous jury instruction; and
>
> (3) the circuit court erred by misapplying the standards promulgated under *State v. Escalona-Naranjo*, 185 Wis. 2d 168, 517 N.W.2d 157 (1994).

Dkt. 11-3, at 8-40. The Wisconsin Court of Appeals affirmed the circuit court's denial of

postconviction relief. *Id.* at 452. The Wisconsin Supreme Court denied Mey's petition for

review. *Id.* at 534.

Mey then filed his habeas petition with this court. In support of his petition, he raised

four grounds:

> (1) his attorney was ineffective for failing to object to the state's use of gang evidence as contrary to the court's pretrial rulings;
>
> (2) his attorney was ineffective for failing to object to the co-defendants' attorneys' use of gang evidence;
>
> (3) his attorney was ineffective for presenting the jury with highly prejudicial gang evidence; and
>
> (4) his attorney was ineffective for failing to object to the trial court's errors in delivering the jury instructions.

Dkt. 1, at 8-25.[2] I screened his petition and allowed him to proceed on all four grounds.

---

[2] As respondent points out, the four "grounds" identified by Mey are really one federal claim based on ineffective assistance of counsel. *See Peoples v. United States*, 403 F.3d 844, 848 (7th Cir. 2005) ("[I]neffective assistance of counsel is a single ground for relief no matter how many failings the lawyer may have displayed."). But he raised these grounds as separate claims before the state courts and continues to do so in his habeas briefs. The state courts addressed these issues separately, and so will I. I will also consider the combined, cumulative effects of gang-related evidence, as Mey urges in his brief.

ANALYSIS

Under Section 2254, a federal district court may grant habeas relief only when the petitioner demonstrates that he is in custody "in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Because Mey is in custody pursuant to a state judgment, so Section 2254(d), as amended by the Antiterrorism and Effective Death Penalty Act of 1996, governs his petition. 28 U.S.C. 2254(d). Section 2254(d) severely restricts a federal district court's review of a state judgment:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d); *Conner v. McBride*, 375 F.3d 643, 648-49 (7th Cir. 2004). Once the state court has adjudicated the petitioner's claims on the merits, the federal court must be "highly deferential" to the state court's decision. *Davis v. Ayala*, 135 S. Ct. 2187, 2198 (2015). Habeas relief is "a guard against extreme malfunctions in the state criminal justice systems, not a substitute for ordinary error correction through appeal." *Harrington v. Richter*, 562 U.S. 86, 102-03 (2011) (citation and quotation marks omitted). To obtain habeas relief, the petitioner must show that the state court's decision "was so lacking in justification that there was error well understood and comprehended in existing law beyond any possibility for fairminded

disagreement." *Id.* at 103. "If this standard is difficult to meet, that is because it was meant to be." *Id.* at 102.

Here, the last state court to address Mey's arguments was the Wisconsin Court of Appeals, so the opinion of the Wisconsin Court of Appeals is the "operative decision" for Mey's petition. *See Campbell v. Reardon*, 780 F.3d 752, 762 (7th Cir. 2015) ("The operative decision under review is that of the last state court to address a given claim on the merits."). As for the issues adjudicated on the merits, my task is to determine whether the Wisconsin Court of Appeals reasonably applied federal law or unreasonably determined facts; I do not independently perform the analysis based on the facts of Mey's case. *Carrion v. Butler*, 835 F.3d 764, 772 (7th Cir. 2016) (citations omitted). As for the few issues that the Wisconsin Court of Appeals did not adjudicate on the merits, which I will identify below, the applicable standard is de novo. *Brown v. Brown*, 847 F.3d 502, 506 (7th Cir. 2017) (citing *Cone v. Bell*, 556 U.S. 449, 472 (2009) and *Warren v. Baenen*, 712 F.3d 1090, 1096, 1098 (7th Cir. 2013)).

All of Mey's arguments concern ineffective assistance of counsel, so the familiar two-step inquiry under *Strickland* guides the analysis below. First, Mey must show that his "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Strickland v. Washington*, 466 U.S. 668, 687 (1984). Second, May must show that the deficient performance caused him prejudice, which requires "showing that counsel's errors were so serious as to deprive [petitioner] of a fair trial." *Id.* "[B]ecause the *Strickland* standard is a general standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard." *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009) (citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). This standard is "doubly deferential" on habeas corpus review. *Id.*; *see also Richter*, 562 U.S. at 105

(reasoning that the *Strickland* requirements and § 2254(d) are "highly deferential," and "'doubly' so" when applied in tandem (citations omitted)).

## A. Procedural default

Before reaching the merits, I will first address respondent's procedural default defense. A habeas petitioner must fairly present his claims "through a full round of state court review." *Blackmon v. Williams*, 823 F.3d 1088, 1099 (7th Cir. 2016). The purpose of this requirement is to give the state an opportunity to correct its own errors alleged by the petitioner. *Id*. Failure to present his claims fairly to the state courts results in procedural default, and the federal court may decline to consider the procedurally defaulted claims. *Id*.

But a procedural default is an affirmative defense that can be waived. *Perruquet v. Briley*, 390 F.3d 505, 515 (7th Cir. 2004). A respondent can waive the procedural default defense in several ways. *See Perruquet v. Briley*, 390 F.3d 505, 515 (7th Cir. 2004) (summarizing case law). But one sure way to do it is by explicitly stating that it will not pursue a procedural default defense. *Henderson v. Thieret*, 859 F.2d 492, 498 (7th Cir. 1988). When a respondent explicitly waives the procedural defense, a district court "is not permitted to override the state's decision . . . to forego that defense." *Id*.

Here, respondent waived his procedural default defense by pleading in his answer as follows:

> Warden Richardson does not contend that Mey procedurally defaulted his federal claims.

Dkt. 11, at 4. Once respondent disavowed the procedural default defense, it was inappropriate to press the issue in his brief. *See* Dkt. 25, 16-19. Because respondent explicitly waived his procedural default defense, I will decide Mey's petition on the merits.

## B. Gang-related evidence

Mey contends that his attorney erred for: (1) failing to object to the state's use of gang-related evidence; (2) failing to object to other defense counsel's use of gang-related evidence; and (3) using the gang-related evidence himself. The Wisconsin Court of Appeals reached the merits of some, but not all, of these issues. As for the state's use of gang-related evidence, the court of appeals assumed that Mey's attorney's was deficient, but it nonetheless concluded that the state's use of gang-related evidence did not prejudice Mey. Dkt. 11-3, at 454-56. Thus, I will review the deficiency prong de novo; as for the prejudice prong, I will give the court of appeals the AEDPA deference and consider whether the state court unreasonably applied *Strickland*. As for the defense counsel's and Mey's own attorney's use of gang-related evidence, the Wisconsin Court of Appeals declined to reach the merits because Mey had raised these issues for the first time on appeal. Dkt. 27, at 14. I will review these issues de novo.

Applying these standards, I conclude that Mey has established neither deficiency nor prejudice under *Strickland* as to the gang-related evidence.

### 1. The state's use of gang-related evidence

Mey identifies in his habeas brief four instances where the state solicited gang-related evidence: when the prosecutor asked (1) Andrew Pirsch, how he was "jumped" and subjected to violence to become a member of the Bloods; (2) Dela San, what would happen to a gang member if he violated the rules of his gang; (3) Botmanya Men, whether the shooting at issue was a Crips operation; and (4) Nathan Jenkins, whether Mey was one of the Crips members who said that, if Jenkins did not participate in the shooting, Jenkins would be "violated." Dkt. 22, at 13-15.[3] According to Mey, the testimony of these witnesses informed the jury that

---

[3] There were actually more gang references by the state than the four examples identified by

Mey had violent tendencies because of his gang membership. He argues that his attorney should have objected on the grounds that the state's solicitation of this testimony violated the circuit court's pretrial ruling against gratuitous use of gang-related evidence.

Mey's attorney was not deficient for not objecting to this testimony because the objections would have been futile. *See Carter v. Douma*, 796 F.3d 726, 735 (7th Cir. 2015) (concluding that an attorney "was not deficient by failing to make a futile objection."). Before the trial, the circuit court denied the defense attorneys' motion to exclude all gang-related evidence and rejected their argument that the gang-related evidence was prejudicial and unnecessary. The court explained,

> [I]t's relevant because it explains why certain people are associating allegedly with certain other people in furtherance of alleged criminal activity. This stands on different grounds from a situation, whereby, if we simply have a single defendant who was charged, and nothing in the charge indicates along the lines of, because of association with or being a member of a certain ethnic group, or what have you, simply somebody is charged with a violent crime, to bring out, for gratuitous purposes, the fact they're a member of a gang, would be wrong, because it's irrelevant. It's got nothing to do with whether or not they committed the crime.
>
> * * *
>
> The Court's ruling is the State can't make gratuitous use of this; in other words, convict him because he's a member of a gang. Not used gratuitously, but, in the relevant sense, how do you explain why this person is hanging around with this person, that's because they're affiliated together in a social club, which goes by the name of Crips or Bloods.

Dkt. 11-4, at 299-301. Thus, the court's ruling was that it would admit gang-related evidence that is relevant to show motive or conspiracy, but it would exclude gratuitous gang-related

---

Mey. Dkt. 11-3, at 254-57. But Mey challenges only these four.

evidence used to prove guilty solely on defendants' gang affiliations. And the testimony identified by Mey did not violate the circuit court's ruling because they were probative of the defendants' motive: as the state argued during the trial, the fear of gang violence motivated the defendants to carry out the shooting before Fat Boi could retaliate. Indeed, as the circuit court explained during the postconviction-motion hearing,

> Quite frankly, I don't see how either a prosecutor or any defense counsel in this case would be able to effectively present evidence to a jury and make their arguments to a jury if they had been forbidden from making any reference whatsoever to gang relations. Gang relations, that is, either a member of the Crips or Bloods, ran throughout the thread of this trial. It related to all of the convictions of which Mr. Mey stands -- or all the offenses for which Mr. Mey stands convicted.
>
>                                      \* \* \*
>
> There was no ineffective assistance by Mr. Geier for failing to object because there was no reason to object.

Dkt. 11-9, at 58-60. The state's solicitation of gang-related evidence did not violate the circuit court's pretrial order, and Mey's attorney was not deficient for deciding not to make futile objections.

Mey's attorney was not deficient also because he used the gang-related evidence as part of his trial strategy. A trial strategy that falls within "the wide range of competent representation" precludes an ineffective assistance of counsel claim. *Yu Tian Li v. United States*, 648 F.3d 524, 527 (7th Cir. 2011). When a petitioner challenges his attorney's strategy, the court must also evaluate the attorney's performance "in light of the discretion properly accorded an attorney to develop appropriate trial strategies according to the attorney's independent judgment, given the facts of the case, at least some of which may not be reflected in the trial record." *Blake v. United States*, 723 F.3d 870, 879 (7th Cir. 2013).

Here, Mey's attorney decided to allow the gang-related evidence in and use it for Mey's defense. For example, the attorney argued during the closing that given the violence and hierarchy in gangs, Mey, who was only a 16-year-old at the time, could not have been the leader who organized the shooting: the adult gangsters were the ones who called the "shots." Dkt. 11-8, at 610. Likewise, Mey's attorney used the gang-related evidence to undermine the state's theory that an enforcer of the Bloods alerted others about the pending SOS, which, according to the state, prompted the defendants to carry out the shooting. The gang-related evidence showed that the Bloods enforcer had a strong motive not to "snitch" in fear of retaliation from other members of the Bloods. Dkt. 11-8, at 614.

The attorney's choice to use the gang-related evidence in Mey's defense was reasonable. In light of the circuit court's pretrial order, Mey's attorney could not exclude the gang-related evidence. He instead decided to do what he could given the circumstances, which was to use the gang-related evidence for Mey's defense. True, despite this strategic choice, Mey was convicted. But given the circumstances, if the attorney's choice to use the gang-related evidence was—at most—a reasonable miscalculation, and that miscalculation falls short of being a deprivation of counsel under the Sixth Amendment. *See Makiel v. Butler*, 782 F.3d 882, 901–02 (7th Cir. 2015) ("There is 'no expectation that competent counsel will be a flawless strategist or tactician,' and an attorney is not incompetent simply because of a 'reasonable miscalculation.'" (quoting *Richter*, 562 U.S. at 110)); *McAfee v. Thurmer*, 589 F.3d 353, 355-56 (7th Cir. 2009) ("[C]ounsel "need not be perfect, indeed not even very good, to be constitutionally adequate." (quoting *Dean v. Young*, 777 F.2d 1239, 1245 (7th Cir.1985)). And in this case, it is not clear that defense counsel's use of the gang-related evidence could even be called a miscalculation.

Even if Mey's attorney were deficient, the Wisconsin Court of Appeals did not err by concluding that the attorney's error did not prejudice Mey. To establish prejudice, Mey must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Richter*, 562 U.S. at 104. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* To establish a "reasonable probability," showing that the attorney's error had "some conceivable effect on the outcome" is not enough. *Id.* Rather, the error must be "so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id.* This inquiry requires the court to consider the "totality of the evidence before the judge or jury. *Harris v. Thompson*, 698 F.3d 609, 645 (7th Cir. 2012) (quoting *Strickland*, 466 U.S. at 695). A jury's verdict "only weakly supported by the record is more likely to have been affected by errors than one with overwhelming record support." *Id.*

Here, Mey had no reasonable probability that, but for his attorney's errors, the jury would have reached a different result. As Mey indicated in his postconviction brief, "[t]he central issue at trial" was "whether Mey was one of the shooters." Dkt. 11-3, at 171. The evidence clearly showed that he was. For example, one of the former co-defendants, Lucas Rodriguez, testified that after the shooting, Mey claimed to have "shot like 10 [bullets] or something like that." Dkt. 11-6, at 44. According to Rodriguez, Mey "wanted to use the MAC," a submachine gun, and another former co-defendant, Dela San, confirmed that he saw Mey carrying a MAC-11 and saw Mey use it during the shooting.[4] Yet another former co-defendant,

---

[4] Dkt. 11-5, at 751 (Lucas Rodriguez) ("Mark said he wanted to use the MAC.") and Dkt. 11-6, at 453 (Dela San) ("[Paul Mey] said we were going to go look for the Bloods out there and try to get them before they get us. . . . Mark had the MAC-11"), 459 ("Q. . . . Did you see Mark shooting the gun he had? A. Yes.").

Andrew Pirsch, testified that he knew that Mey and others would go to Oregon to shoot at people, saw Mey carry the MAC-11, and saw Mey shoot it.[5]

Respondent contends that these witness statements show only glimpses of Mey's lengthy trial and that the evidence against Mey was overwhelming. Mey does not respond to respondent's argument, so I need not recount every piece of evidence the state had presented against Mey. Given the evidence against Mey identified by respondent, the Wisconsin Court of Appeals did not err in concluding that the gang-related evidence did not undermine the court's confidence in the jury verdict.

### 2. Defense counsel's use of gang-related evidence

As for the co-defendants counsel's use of gang-related evidence, Mey fails to satisfy the deficiency prong of *Strickland*. He identifies three examples where the co-defendants' counsel elicited gang-related evidence: they asked (1) Andrew Pirch, how he would be punished if he had failed to obey the orders from gang leaders; (2) Nora Van, whether a gang member could be murdered for failure to obey an order from a gang leader; and (3) Lucas Rodriguez, how the initiation process for joining a gang involved being subjected to violence, Dkt. 22, at 17-19. But Mey does not explain how his attorney's failure to object to these statements was in error.

Mey's entire argument as to the deficiency prong is as follows:

> There are pitfalls when co-defendants' are tried together and it is trial counsels' obligation to be mindful of those pitfalls. Failing to do so falls well below the objective standard of reasonableness that is addressed by *Strickland*.

---

[5] Dkt. 11-6, at 232-33 (Andrew Pirsch) ("A. Mark asked to use it in Oregon because he was trying to figure out where we were going to go after. . . . Q. What were you going to do? A. Shoot at them."), 237 ("Q. What did you see Mark do? A. Mark was ahead of me, so I saw him shoot."), 264 ("Q. Who had that gun at the time of the shooting? A. Mark").

Dkt. 22, at 19. Mey offers no more than this conclusory assertion, so his argument is undeveloped. He has therefore waived this argument, *Fabriko Acquisition Corp. v. Prokos*, 536 F.3d 605, 609 (7th Cir. 2008), and he has not carried his burden to show that the attorney's error was "so serious that counsel was not functioning as the 'counsel'" promised under the Sixth Amendment, *Richter*, 562 U.S. at 104.

### 3. Use of gang-related evidence by Mey's own attorney

As for his own attorney's use of gang-related evidence, Mey identifies just one instance: the attorney questioned Rannzyno Bou, one of the Blood enforcers, about how he got beat up by a "bunch" of other Blood enforcers for urinating on a car that belonged to the kingpin of the Bloods, Fat Boi.[6] Dkt. 11-7, at 494. Mey calls the testimony of Bou "highly prejudicial" and contends that the attorney had no rational reason to elicit this testimony. Dkt. 22, at 19-21. But Mey's attorney did have a rational reason.

During closing arguments, Mey's attorney argued that Fat Boi had great influence because of his status as the kingpin of the Bloods in the Chicago area. Dkt. 11-8, at 607. He also argued that if a powerful kingpin like Fat Boi really wanted Mey dead and issued an SOS on him, he could have sent his right-hand man known as "Peanuts" to kill Mey on the same day, without leaving Mey a chance for a preemptive attack. *Id*. Thus, according to the attorney, the state's theory that Fat Boi ordered the SOS on Mey and that Mey participated in the shooting as a preemptive strike was implausible. Bou's testimony supported the attorney's efforts to undermine the state's theory: if Fat Boi was really a powerful kingpin who would

---

[6] Mey refers to the witness as "Bau," Dkt. 22, at 20, but the correct name of the witness is Rannzyno Bou. During the trial, he was also referred to by his nickname, Dino. Dkt. 11-7, at 463.

order the assault on a member of his own gang just for urinating on his car, then Fat Boi would order his enforcers to kill a member of a rival gang immediately for stealing money from him. Moreover, this testimony was elicited on the seventh day of the trial, when numerous other gang references had already been made by the state and the co-defendants. Given these circumstances, eliciting Bou's testimony, if it were error at all, was not so serious to be a constitutional deprivation of counsel.

The attorney's error also did not prejudice Mey, given that the testimony was about Bou, not Mey. Mey argues that he was prejudiced because he was depicted of having a violent character based on Bou's testimony, but that argument is tenuous given that Bou's incident with Fat Boi had nothing to do with him. Besides, Bou's testimony allows, at most, the inference that "gang members are violent," but this was something that the jury already knew by the seventh day of Mey's trial.

Mey also argues that his attorney and other defense counsel violated the circuit court's order. Dkt. 22, at 21. But the circuit court's pretrial order as to the gang-related evidence pertained to only the state's use of such evidence. It did not address the use of such evidence by the defense.

### 4. Cumulative effect of gang-related evidence

Mey also contends that all gang-related evidence—introduced by the state, co-defendants' counsel, and his own attorney, considered together—cumulatively prejudiced him and that his attorney was ineffective for allowing this to happen. Not so. As noted above, given the weight of the evidence against Mey, he had no reasonable probability that, but for his attorney's errors, the jury would have reached a different outcome. Mey had denied being one

of the shooters, but multiple witnesses testified that he was, in fact, one of the shooters. The evidence supports the jury verdict.

Aside from the evidence against Mey, the harm caused by the gang-related evidence was also mitigated by a limiting instruction. At the request of Mey's attorney, the circuit court instructed the jury not to infer guilt based on gang affiliation. Dkt. 11-2, at 94. Mey does not argue that this limiting instruction was ineffective.

Mey instead argues that "the devastating effect of [his attorney's failure to object to gang-related evidence] cannot be overstated. Plain and simply, the jury was painted a picture of Mr. Mey as having a violent character." Dkt. 22, at 21. This argument is undeveloped and conclusory. Because Mey does not explain how the absence of gang-related evidence would have changed the outcome, he has not carried his burden to satisfy the *Strickland* requirements.[7]

## C. Jury instruction

Mey's last argument is that his attorney failed to object to the closing jury instructions on the second and third counts of attempted homicide. In particular, he argues that the attorney should have objected when the court told the jury the following:

> To this charge, each of the defendants before you has entered a plea of *guilty*, which means that the State must prove every element of the offense charged beyond a reasonable doubt.

---

[7] Mey does not challenge the trial court's decision to allow gang-related evidence. But even if he did, it would not necessarily be an error entitling him to habeas relief. Courts have recognized that evidence of gang affiliation is "potentially prejudicial and inflammatory, as it poses the risk that the jury will associate gang membership with a propensity for committing crimes and find the defendant guilty by association." *United States v. Ozuna*, 674 F.3d 677, 681 (7th Cir. 2012). But evidence of gang affiliation "is not automatically inadmissible." *Id.* Indeed, courts have recognized that the evidence of gang affiliation is more probative than prejudicial in numerous cases. *See, e.g., United States v. Thomas*, 86 F.3d 647, 652 (7th Cir. 1996). One of those instances is where, as it is the case here, the evidence of gang affiliation is admitted to show motive. *Ozuna*, 674 F.3d at 681.

Dkt. 11-8, at 551-52 (emphasis added). On appeal, Mey argued that the circuit court erred in the jury instruction, although he did not argue then that his attorney failed to object to the jury instruction. The Wisconsin Court of Appeals held that the circuit court's error in the jury instruction did not prejudice Mey because "most jurors would understand this was an error by the court" and "[t]he remainder of the instructions made it clear that it was the jury's task to determine the defendants' guilt on all counts that were subject of the trial." Dkt. 11-3, at 453-54.

Respondent argues that Mey procedurally defaulted by casting the issue as an error by the circuit court, not by his attorney. But as noted above, respondent explicitly waived the defense of procedural default. Accordingly, I will address the merits of Mey's argument. The applicable standard here is again de novo because the Wisconsin Court of Appeals did not address the merits of Mey's argument under the *Strickland* analysis.[8] I conclude that Mey was not prejudiced by his attorney's failure to object to the jury instruction given the context of the full instructions.

If the problematic instruction were the only guidance the circuit court gave to the jury, Mey's argument would have a stronger claim. But as many trial courts do, the circuit court here gave its jury instructions at multiple stages of the trial, and the instructions given during the

---

[8] It is arguable that the Wisconsin Court of Appeals reached the merits of Mey's arguments, and thus the applicable standard is a deferential one under the AEDPA. The court concluded that Mey was not prejudiced due to the erroneous jury instruction, and if the jury instruction did not prejudice Mey, his attorney's failure to object did not prejudice him either. When the merits of a federal claim are "effectively reached" in a different context, the AEDPA's deferential standard could apply to the state court's decision. *See Sturgeon v. Chandler*, 552 F.3d 604, 611-12 (7th Cir. 2009). On the other hand, the prejudice analysis applied to a trial court's error and the one under *Strickland* differ slightly. In any event, this is immaterial here because even under the less deferential standard, de novo, Mey cannot prevail.

other parts of the trial made clear that Mey's guilt had not been determined. For example, at the beginning of the trial, the circuit court explained that the state must prove defendants' guilt. Dkt. 11-2, at 82 ("The burden of establishing every fact necessary to constitute guilt is upon the State. Before you can return a verdict of guilty, the evidence must satisfy you beyond a reasonable doubt that the defendant is guilty"). Likewise, during the closing instructions, the court instructed the jury that it is their role to decide defendants' guilt. *See* Dkt. 11-8, at 510 ("You, the jury, are the sole judges of the facts, and the Court is the judge of the law only."), 513-14 ("It is for you to decide, as to each defendant before you, whether defendant is guilty or not guilty of the offenses charged in the Information."). And even during the problematic jury instruction itself, the court stated immediately after the problematic part that "the State must prove every element of the offense charged beyond a reasonable doubt." *Id.* at 551-52.

The court also gave the problematic jury instruction *before* the closing argument by Mey's attorney, who argued for Mey's innocence. *See id.* at 604-40. A juror could have been confused at first by the problematic instruction, but a rational juror would have realized, before deliberating, that the trial court had merely misspoken, and that the jury needed to decide whether Mey was guilty based on the evidence presented.

CONCLUSION

For the foregoing reasons, I will deny Mey's petition. As for the gang-related evidence, Mey has not shown that his trial attorney was deficient or that the attorney's error prejudiced him. As for the jury instruction, he was not prejudiced by his attorney's failure to object.

CERTIFICATE OF APPEALABILITY

Under Rule 11 of the Rules Governing Section 2254 Cases, I must issue or deny a certificate of appealability when entering a final order adverse to a petitioner. A certificate of appealability will not issue unless petitioner makes "a substantial showing of the denial of a constitutional right," 28 U.S.C. § 2253(c)(2), which requires him to demonstrate "that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Tennard v. Dretke*, 542 U.S. 274, 282 (2004) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)). Although the rule allows me to ask the parties to submit arguments on whether a certificate should issue, it is not necessary to do so in this case. For the reasons already stated, I conclude that Mey has not made a showing, substantial or otherwise, that his conviction was obtained in violation of clearly established federal law as decided by the Supreme Court. Because reasonable jurists would not otherwise debate whether a different result was required, I will not issue Mey a certificate of appealability.


ORDER

IT IS ORDERED that:

1. Petitioner Mark J. Mey's petition for a writ of habeas corpus, Dkt. 1, is DENIED.

2. This case is DISMISSED.

3. A certificate of appealability is DENIED. If petitioner wishes, he may seek a certificate from the court of appeals under Federal Rule of Appellate Procedure 22.

4. The clerk of court is directed to close this case.

Entered April 19, 2017.

BY THE COURT:

/s/
_____
JAMES D. PETERSON
District Judge